FILED
**United States Court of Appeals**
**Tenth Circuit**

**August 6, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SHARON A. BURK,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

Defendant-Appellee.

No. 11-5138
(D.C. No. 4:10-CV-00542-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**,
Circuit Judge.

Sharon A. Burk appeals from an order of the district court affirming the

Commissioner's decision denying her application for disability benefits. We have

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g) and we affirm.

Ms. Burk filed her application on January 18, 2006, alleging disability

beginning June 1, 2004. The agency denied Ms. Burk's application initially and on

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

reconsideration. Ms. Burk received a de novo hearing before an administrative law judge (ALJ). The ALJ concluded that Ms. Burk had the residual functional capacity (RFC) for light work. He denied her application for benefits, concluding that she was not disabled at step four of the analysis because she could perform her past relevant work. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining five-step process for evaluating claims for disability benefits). The Appeals Council denied review and Ms. Burk appealed to the district court. The district court upheld the ALJ's decision. This appeal followed.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). On appeal, Ms. Burk argues: (1) the ALJ erred at steps two and three of the sequential process because he did not consider all of her impairments; (2) the ALJ erred at step four of the process because he did not properly consider the effects of all of her impairments on her ability to return to her past relevant work; and (3) the ALJ failed to perform a proper credibility determination.

I.

Ms. Burk first contends that the ALJ erred at step two of the process by not finding her mental impairment and all of her physical impairments severe. The ALJ listed Ms. Burk's severe impairments as degenerative lumbar and cervical disk disease, morbid obesity, and carpal tunnel syndrome. Ms. Burk asserts that her

depression, lumbar radiculopathy and cervical radiculopathy, hypertension, migraine headaches, and thoracic outlet syndrome were medically determinable impairments that should have been considered severe. We need not reach the merits of Ms. Burk's arguments, however, because any alleged error at this step was harmless.

At step two, a claimant is required to show that she has at least one severe impairment to avoid a finding of "not disabled" and proceed to the other steps in the sequential process. *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("If you do not have *a severe* medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . . , we will find that you are not disabled." (emphasis added)); *cf. Lax*, 489 F.3d at 1084 ("If a determination can be made at any of the steps that a claimant . . . is not disabled, evaluation under subsequent steps is not necessary." (quotation omitted)). Here, Ms. Burk met her burden at step two as the ALJ determined that she had three severe impairments. He was therefore obligated to continue to the next step of the sequential process and he did so.

In *Carpenter v. Astrue*, 537 F.3d 1264, 1265-66 (10th Cir. 2008), we recognized that the ALJ may have committed an error at step two, but we explained that "any error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." The same holds true in this case. The ALJ proceeded to step three after concluding that Ms. Burk could not be denied benefits at step two because she had at least one severe impairment. Accordingly, the

failure to find other impairments severe at step two does not constitute reversible error.

Ms. Burk next argues that the ALJ erred at step three in concluding that she did not meet all the requirements for Listing 1.04. Ms. Burk did not identify what paragraph of Listing 1.04 she allegedly satisfied, but she focuses her argument on her alleged inability to ambulate effectively, which only pertains to paragraph C, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C. Ms. Burk bears the burden of showing that her impairment matches a listed impairment. *See Lax*, 489 F.3d at 1084. "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Although Ms. Burk met some of the requirements for Listing 1.04C, she did not meet the requirement of demonstrating that she has the inability to ambulate effectively. One medical record stated that she walked with the aid of a four-prong walker and that her gait was slow, but that was in November 2003 before the period under review. Her records during the relevant time period show no problems with her gait. *See*, *e.g.,* Aplt. App., Vol. 3 at 578 (gait "steady"); and *id.* at 615 ("No gait difficulties"); and *id.* at 622 ("Gait and coordination intact"). Moreover, the consulting examiner made the following observations: "[Ms. Burk's] gait is normal. She does present with a cane but does not require cane during ambulation. She does

not limp.  She has a strong steady gait.  She is able to heel walk, toe walk, tandem walk, and squat without difficulty."  Aplt. App., Vol. 2 at 344.  The record evidence supports the ALJ's determination that Ms. Burk did not have an impairment that met or equaled a listed impairment.

## II.

Ms. Burk argues that the ALJ erred at step four by not including any limitations in her RFC for her mental impairment, cervical and lumbar radiculopathy, or carpal tunnel syndrome.  Substantial evidence supports the ALJ's RFC.  As the ALJ noted "the claimant's treating physicians did not place any functional restrictions on her activities that would preclude light work activity with the previously-mentioned [RFC] restrictions."  Aplt. App., Vol. 2 at 13.

The record evidence does not support any functional limitations from Ms. Burk's mental impairment.  From April 13, 2004 through February 14, 2006, her treating physicians gave her a Global Assessment of Functioning (GAF) score of 75.  *Id*. at 204.  Such a score indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors" and there is "no more than slight impairment in social, occupational, or school functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed., Text Revision 2000).  Ms. Burk's GAF score is consistent with state agency experts who concluded that she did not have a severe mental impairment and that she only had mild limitations in activities of daily living, social functioning, and maintaining

- 5 -

concentration, persistence and pace. The state agency doctor noted that Ms. Burk's activities of daily living were "limited only by physical problems." Aplt. App., Vol. 2 at 340.

The record evidence does not support any additional functional limitations for cervical and lumbar radiculopathy. Although these conditions were mentioned in her treatment notes, Ms. Burk does not point to evidence showing functional limitations related to these conditions that are inconsistent with the ALJ's RFC for light work. The ALJ's RFC acknowledges that Ms. Burk "has mild to moderate to occasionally chronic pain." *Id*. at 13. But the ALJ concluded that "she can remain attentive in a work setting" and "her medications do not prevent her from remaining alert." *Id*.

Likewise, the record does not support any additional functional limitations due to Ms. Burk's carpal tunnel syndrome. In February 2006, her doctor noted that she had "4/5 Grips," Aplt. App., Vol. 3 at 524, but also noted "Grip and upper arm strength good and equal bilaterally," *id*. at 521. In her June 2006, consultative examination, the doctor observed: "Grip strength is 5/5 bilaterally strong and firm. She is able to do both gross and fine manipulation with the hands . . . . Fine tactile manipulation of objects is normal." *Id*., Vol. 2 at 345. When the ALJ limited Ms. Burk to light work he accounted for the limitations that the record as a whole supported.

Ms. Burk next argues that the ALJ failed to perform a proper analysis of the precise mental and physical demands of her past relevant work as required by

*Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). We conclude that the ALJ did not need to explore the mental demands of Ms. Burk's past relevant work because he found that her mental impairment did not impact her ability to work and he did not include any functional limitations related to her mental impairment in the RFC.

As for the physical demands of her past work, Ms. Burk supplied information about those demands in work history reports and through her testimony. We conclude that the ALJ did not err in relying on Ms. Burk's description of the physical demands of her past work. The information she provided was sufficient for the ALJ to determine that the job requirements for her past relevant work did not conflict with an RFC for light work. Moreover, the Vocational Expert (VE) testified she had studied the record concerning Ms. Burk's work history and needed no clarification. She testified that both the supply tech job and the cashier jobs were light exertion. The ALJ stated that he relied on the VE's testimony that Ms. Burk's RFC posed no difficulties in returning to her past work. We agree with the district court that "[w]here, as here, the only RFC restriction was that [Ms. Burk] was limited to performing a full range of light work, extensive inquiry into the demands of past work is not necessary." Aplt. App., Vol. 1 at 52.

### III.

Ms. Burk next challenges the ALJ's credibility determination. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as

- 7 -

to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citations, quotations, and alterations omitted). Ms. Burk contends that the ALJ erred because his "credibility determination is nothing more than a conclusion in the guise of findings." Aplt. Br. at 28 (citation omitted). We disagree with her contention.

After setting out Ms. Burk's RFC, the ALJ noted that he did not discount all of Ms. Burk's medical complaints and recognized that her medical progress was not what she wished it to be. The ALJ further noted, however, that Ms. Burk's treating physicians "did not place any functional restrictions on her activities that would preclude light work with the previously mentioned restrictions." Aplt. App., Vol. 2 at 13. The ALJ then recited portions of Ms. Burk's testimony from the hearing relating to her description of her pain, depression, and functional limitations. For example, Ms. Burk testified that she has "a constant limp," and can only walk one block at a time. *Id*. at 14. She also testified to weakened grip strength that made her drop things like her pills. The ALJ concluded that Ms. Burk's impairments could reasonably be expected to cause her alleged symptoms, but the ALJ determined that Ms. Burk's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC.

The ALJ supported his credibility determination with specific evidence. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ noted that Ms. Burk's alleged date of onset was June 1, 2004, but two years later, the consultative examiner found that: her grip strength was 5/5 bilaterally; she was able to do both gross and fine manipulation with her hands; she had full range of motion in her extremities; her gait was normal; she did not limp; she did not require a cane; and she could walk and squat without difficulty. The ALJ then discussed Ms. Burk's mental impairment. The ALJ recognized that Ms. Burk had depression, but noted that the Disability Determination Service concluded that her activities of daily living were limited only by her physical problems. The ALJ also explained that the medical records did not indicate that Ms. Burk had a history of confrontational or otherwise uncooperative work relationships and that her medications appeared to be effective when used.

Ms. Burk spends much of her argument trying to challenge the ALJ's credibility determination by citing to her own testimony and other statements she made on disability reports in an apparent attempt to show that the evidence does not support the ALJ's RFC or the ALJ's credibility determination. But her argument impermissibly asks this court to reweigh the evidence and substitute our judgment for that of the Commissioner. *See Hackett*, 395 F.3d at 1173.

Ms. Burk further contends that the ALJ ignored her consistent complaints to treating doctors regarding pain, and she challenges the ALJ's conclusion that her

"medications do not prevent her from remaining alert," and that her "medications appear to be effective when used." Aplt. Br. at 33 (quotations omitted). We see no merit to these challenges.

The ALJ did not ignore Ms. Burk's complaints of pain. The ALJ included in Ms. Burk's RFC that she "has mild to moderate to occasionally chronic pain." Aplt. App., Vol. 2 at 13. But the ALJ concluded that "she can remain attentive in a work setting" and "her medications do not prevent her from remaining alert." *Id.* Ms. Burk challenges this conclusion based on her own testimony that one of her medications made her "zone out," and based on medical records showing that "drowsiness is a common side effect of such medication." Aplt. Br. at 33 (quotation omitted). But she did not report having any side effects from her medication on her disability report, *see* Aplt. App., Vol. 2 at 146, and there is no mention of side effects from her pain medication in her treatment notes.

As for her challenge to the ALJ's conclusion that her medication was effective in treating her depression, her treatment notes consistently show that taking celexa was helping with her depression. *See, e.g., id.* at 206 ("says she is doing fine. [S]he says her medication celexa is helping her and denies any side effects"); *id.* at 214 ("pt reports doing good. [N]o complaints. [C]elexa helping"); *id.* at 230 ("she says celexa is helping and denies any side effects. [M]ood 'fine'"); and *id.* at 280 ("she denies depression. [C]elexa helping and denies any side effects"). We conclude that the ALJ's credibility determination is properly supported by substantial evidence.

- 10 -

IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

Entered for the Court


Wade Brorby
Senior Circuit Judge