**Christopher BAKER By his Parent and Natural Guardian, Renee BAKER, SSN: 071–68–8174, Plaintiff,**

v.

**SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. 94 Civ. 240 (CGC).

United States District Court, N.D. New York.

Jan. 11, 1995.

---

## OPINION AND ORDER

KOELTL, District Judge [*]:

The issue in this case is whether substantial evidence supports the finding by the Secretary of the Department of Health and Human Services ("Secretary") that Christopher Baker, an eleven year old child, is not entitled to Supplemental Security Income benefits because he is not disabled within the meaning of that program. The administrative denial of disability benefits was based on a review of both medical and school records which demonstrate that, while Christopher, who has been classified as learning disabled, is in a special education class, his performance on a standardized intelligence test and on other achievement tests demonstrates that he is of average intelligence and his performance in school, while improving, has been hampered by an ocular-motor dysfunction. After listening to the sworn testimony of Christopher and his mother, and reviewing all of the school and medical records that were submitted, the Administrative Law Judge ("ALJ") determined that Christopher was not disabled. The Appeals Council of the Social Security Administration denied the request to review the ALJ's decision. This appeal followed.[1] For the reasons explained below, after reviewing the administrative record, this Court concludes that there is sub-stantial evidence supporting the Secretary's determination that Christopher is not disabled within the meaning of the Supplemental Security Income program.

## I.

The plaintiff, Christopher Baker, was born on November 10, 1983 and is now eleven years old. (R. at 24.) He has been classified as learning disabled by the Saranac Central School District's Committee on Special Education and is currently enrolled in a self-contained special education class. (R. at 158.) Christopher also suffers from an ocular-motor dysfunction that causes impairments in his binocular skills (i.e., his ability to use both eyes), his fine motor eye tracking and his visual span. (R. at 112–13.)

In July of 1992, Christopher's mother, Renee Baker, filed an application for Supplemental Security Income benefits based on Christopher's disability under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1382 *et seq.* (1992 & Supp.1994), which provides such benefits to the aged, the blind and the disabled. (R. at 52.) The application was denied by notice dated November 18, 1992. (R. at 60–62.) The denial was based on a report by Dr. Deborah Bostic who reviewed the reports by the Saranac Central School District and by Dr. Hayes I. Sogoloff, an eye doctor who had examined Christopher. Dr. Bostic concluded that the severity of Christopher's impairment did not satisfy the requirements for disability under the Supplemental Security Income program. (R. at 59.). Christopher's mother made a timely motion for reconsideration that was denied by notice dated March 23, 1993, (R. at 67–69); subsequently, she requested a hearing on the denial, (R. at 70–71).

On September 7, 1993, a hearing was held by ALJ J. Lawson Brown in Plattsburgh,

---

[*] Pursuant to the authorization of Chief Judge Jon O. Newman of the Court of Appeals for the Second Circuit, this case was transferred from the Northern District of New York to this Court for the purpose of disposing of the pending motion by order of Chief Judge Thomas J. McAvoy of the Northern District of New York dated November 5, 1994.

1. This appeal was taken pursuant to 42 U.S.C. § 1383(c)(3) which authorizes judicial review of determinations of the Secretary of Health and Human Services concerning the Supplemental Security Income program, in accordance with 42 U.S.C. § 405(g). Under the Standing Order of the Northern District of New York, submissions by the plaintiff and the defendant in connection with such an appeal are treated as cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

New York. The issue presented at the hearing was whether Christopher is disabled under the Act. The Act defines disability as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of eighteen, if he suffers from any medically determinable physical or mental impairment of comparable severity).

42 U.S.C. § 1382c(a)(3)(A) (1992). The Secretary defines "comparable severity" as a child's "physical or mental impairment(s) [that] so limits [the] ability to function independently, appropriately, and effectively in an age-appropriate manner that [the] impairment(s) and the limitations resulting from it are comparable to those which would disable an adult." 20 C.F.R. § 416.924(a) (1994). For a child between the ages of three and sixteen, the impairment must substantially reduce the child's ability to "[g]row, develop, or mature physically, mentally, or emotionally and, thus, to engage in age-appropriate activities of daily living … in self-care, play and recreation, school and academics, community activities, vocational settings, peer relationships, or family life[.]" 20 C.F.R. § 416.924(a)(2) (1994); *see also* 20 C.F.R. § 416.924b(b)(3) (1994).

The Social Security Regulations pertaining to Supplemental Security Income claims for children were revised following the Supreme Court's decision in *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). They prescribe a sequential evaluation process that is used to determine whether a child is eligible for supplemental payments based on a disability. In evaluating a child, first it is determined whether the child is engaging in a substantial gainful activity. If the child is engaging in a substantial gainful activity, he is not considered disabled under the Act. If he is not, it is then determined whether the child has an impairment or combination of impairments that is severe. If the child does not have a severe impairment, he is not considered disabled under the

Act. If he does have a severe impairment, it is then determined whether the impairment meets or equals in severity any impairment listed in Appendix 1 of Subpart P of Part 404 of the regulations. If the impairment meets such criteria, the child is considered disabled. If the child does not have a listed impairment, an individualized functional assessment is conducted to determine whether the impairment is of comparable severity to that which would disable an adult. 20 C.F.R. § 416.924(b) (1994).

Christopher's case was one that required the ALJ to reach this final level of inquiry and to determine whether Christopher's impairment was of comparable severity to that which would disable an adult. Pursuant to the regulations, ALJ Brown performed an individualized functional assessment of Christopher in order to make such a determination. This required him to assess Christopher in six different areas: cognitive function; communicative function; motor function; social function; personal/behavioral function; and concentration, persistence and pace. 20 C.F.R. § 416.924d(h) (1994). The Social Security Administration generally considers a child between the ages of three and sixteen disabled if the child has a marked impairment in one of the six areas and a moderate impairment in a second area, or if the child has a moderate impairment in any three of the six areas. 20 C.F.R. § 416.924e(c)(2)(i)–(ii) (1994).

A "marked impairment" is one that is "more than moderate but less than extreme" where "the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.924e(c)(2) (1994) (incorporating by reference the definition of marked impairment at 20 C.F.R. Part 404, Subpt. P, App. 1, § 112.00(C) (1994)). A "moderate impairment" is one that is not as severe as a marked impairment. *Id.*

The regulations stress that "[e]ach case must be evaluated on its own merits using the principles and guidelines of all the regulations addressing childhood disability." *Id.* They also explain that in making a determi-

nation whether a child is disabled, the Secretary considers "all relevant evidence" which may, in a given case, include "medical evidence, school records, information from people who know [the child] and can provide information about [the child's] functioning—such as [the child's] parents, caregivers, and teachers—and other evidence that can help us assess [the child's] functioning on a longitudinal basis." 20 C.F.R. § 416.924(g) (1994).

ALJ Brown ruled that Christopher had: no limitation in either cognitive function or social function; a less than moderate limitation in communicative function, motor function and personal/behavioral function; and a less than moderate limitation in concentration, persistence and pace. (R. at 15.) Accordingly, he found that Christopher's impairment was not of comparable severity to that which would disable an adult, and he denied the application for supplemental benefits. (R. at 15.) Ms. Baker requested a review of ALJ Brown's decision by the Social Security Administration's Appeals Council on October 28, 1993. (R. at 7–8.) The Appeals Council denied the request on January 25, 1994. (R. at 4–5.) ALJ Brown's decision therefore became the final decision of the Secretary with respect to the July 14, 1992 application for supplemental benefits.[2] Christopher's mother filed a complaint on Christopher's behalf on March 1, 1994.

## II.

■ A court may reverse a finding of the Secretary only if that finding is not supported by substantial evidence in the record. 42 U.S.C. § 405(g) (1991) (made applicable to Supplemental Security Income cases by 42 U.S.C. § 1383(c)(3) (1992)). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991).

The plaintiff argues that the Secretary's decision to deny benefits is not supported by substantial evidence because the evidence presented at the hearing showed that Christopher has: a marked limitation in cognitive function; a marked limitation in concentration, persistence and pace; and at least a moderate limitation in personal/behavioral function. Therefore, the plaintiff contends, Christopher suffers from a disability of comparable severity to that which would disable an adult. In response, the defendant argues that the Secretary's findings are supported by substantial evidence.

■ With respect to Christopher's cognitive function, the plaintiff argues that the Secretary's determination that Christopher has no limitation in cognitive function is not supported by substantial evidence. The regulations define "cognitive function" for school-age children between the ages of six and twelve, by way of example, as the "ability to progress in learning the skills involved in reading, writing, and mathematics...." 20 C.F.R. § 416.924d(h)(1) (1994). The plaintiff complains that ALJ Brown placed too much emphasis on Christopher's I.Q. scores, which are within average range, and ignored evaluations of Christopher's performance measured in terms of grade equivalency which show his below grade level performance. The plaintiff contends that this evidence—that ALJ Brown allegedly ignored—better measures Christopher's cognitive function than does Christopher's I.Q. Additionally, the plaintiff contends that ALJ Brown did not sufficiently consider Christopher's learning disability caused by his ocular-motor dysfunction in assessing Christopher's cognitive ability.

However, there is more than sufficient relevant evidence for a reasonable person to accept the Secretary's determination that Christopher has no limitation in cognitive function. Indeed, that conclusion had been reached both by Dr. Bostic, based on her review of the records, and by ALJ Brown after reviewing the entire record and listen-

2. Accordingly, references to the determinations and findings that are at issue in this appeal are referred to, interchangeably, as those of the ALJ and those of the Secretary.

ing to and evaluating the testimony of Christopher and his mother.

■ In reaching its conclusion that there exists substantial evidence to support the Secretary's finding, the Court has taken into account all of the evidence in the record and not only Christopher's performance on IQ and other standardized tests. However, the results of IQ and other standardized tests clearly constitute relevant and important evidence of cognitive ability.[3] In any case, all of the evidence in the record provides a sufficient basis for the Secretary's determination.

Christopher was referred in January of 1991 for a psycho-educational evaluation because of his slow progress in kindergarten and the first grade; in fact, Christopher had been required to repeat kindergarten. (R. at 128.) Christopher had a great deal of difficulty with basic reading skills and forming letters. (R. at 128.) At that time, Christopher took the Wechsler Intelligence Scale for Children—Revised and scored a 105 in verbal IQ, a 109 in performance IQ and a 107 full scale IQ, placing him in the "average" intelligence range. (R. at 129.) Christopher's score on the Woodcock–Johnson Psychoeducational Battery—Part I Revised showed that his functioning level was "above average." (R. at 129.) On the Kaufman Test of Educational Achievement, Christopher obtained scores of between 1.0 and 1.3. (R. at 130.) The examiner concluded that: "Chris may be experiencing the beginning of visual-perception weaknesses which are impeding his acquisition of reading skills." (R. at 130.)

Consequently, Christopher was referred to Dr. Sogoloff, an eye doctor who examined him and has since recommended eyeglasses and exercises to address Christopher's ocular-motor dysfunction. (R. at 112–13, 126–27.) Significantly, the regulations state that "[w]ith adequate treatment or intervention, some children not only have their symptoms and signs reduced, but also return to or achieve a level of functioning that is consistent with the norms for their age." 20 C.F.R. § 416.924c(h) (1994).

Christopher's academic performance has improved following his placement in a small, structured classroom environment; he was placed in a special education class beginning in September of 1992, in the second grade.[4] When Christopher's individualized education program was reviewed in April of 1993, only seven months after this placement, he had made relatively significant improvement in almost all tested areas of educational functioning (measured in terms of grade equivalency). Most notably, Christopher progressed from a 1.3 score in Math Concepts in June of 1992 to a score of 2.2, from 1.3 to 2.0 in Math Computation and from 1.3 to 2.6 in Math Application. (R. at 144, 161.) While Christopher's reading skills progressed only slightly, Christopher demonstrated improvement in his written expression and spelling, although each of these scores is below his grade level. (R. at 144, 161.) Ms. Baker's testimony is consistent with the conclusion that Christopher's academic performance is improving. At the administrative hearing, she testified that Christopher was doing third grade work, although he had started the fourth grade, (R. at 24), and that he had improved somewhat in reading and in arithmetic, (R. at 27).

The April, 1993 evaluation of Christopher for the Saranac Central School District concluded that Christopher's intellectual functioning was average. (R. at 145.) Also, an October, 1992 speech and language evaluation showed that Christopher's language skills fell within average limits. (R. at 133.)

Thus, there is substantial evidence to support the ALJ's conclusion that: "[Chris is] a basically healthy nine year old who has a visual tracking problem that has affected his academic performance. Nevertheless, he has

3. In prescribing the ways in which the severity of listed impairments may be measured, the regulations specify that standardized tests are recognized as the "preferred method of documentation" when available. 20 C.F.R. Part 404, Subpt. P, App. 1, § 112.00(C) (1994). It is these listed impairments which serve as benchmarks in conducting an individualized functional assessment. See 20 C.F.R. § 416.924e(c)(2) (1994).

4. The regulations provide that the fact that a child is in a special education class does not, in itself, establish the child's "actual limitations or abilities." 20 C.F.R. § 416.924c(g)(2) (1994).

20/20 visual acuity and, while he is a bit behind in school, he has been making steady progress. Intelligence testing has indicated that he functions within the average range." (R. at 15.) Reviewing all of the evidence in the administrative record, it is clear that there is substantial evidence to support the ALJ's finding of no limitation in cognitive function.[5]

■ With respect to Christopher's concentration, persistence and pace, the plaintiff argues that the Secretary's finding that Christopher has a less than moderate limitation is not supported by substantial evidence. This aspect of the assessment measures a child's ability "to engage in an activity, such as playing or reading, and to sustain the activity for a period of time and at a pace appropriate to ... age." 20 C.F.R. § 416.924d(h)(6) (1994). The plaintiff points to evidence in the record pertaining to Christopher's demonstrated weakness in maintaining his concentration in completing tasks and engaging in activities and his need for individualized monitoring in the classroom. The plaintiff criticizes ALJ Brown's silence in his decision with respect to this evidence.

However, the record demonstrates Christopher's ability to engage in recreational activities, such as swimming, woodworking, walking the dog and participating in the Boy Scouts. (R. at 96, 146.) It also indicates his ability to focus himself on tasks in the classroom and complete some classroom tasks on his own. (R. at 128, 135.) Additionally, Christopher has made progress since his placement in a smaller and more structured classroom environment. Christopher's most recent educational review by the Saranac Central School District, in April of 1993, concluded: "Chris is making slow steady progress. Chris benefits from frequent review." (R. at 163.) It also noted that Christopher requires minimal assistance from support personnel. (R. at 162.)

As the Secretary argues, the record clearly contains relevant evidence that a reasonable person might accept as adequate to support the Secretary's determination that Christopher has a less than moderate limitation in concentration, persistence and pace.

■ Finally, with respect to Christopher's limitation in personal/behavioral function, the plaintiff argues that the Secretary's determination that Christopher possesses a less than moderate impairment is not supported by substantial evidence. Personal/behavioral function is defined as the "ability to help yourself and to cooperate with others in taking care of your personal needs and safety; to respond appropriately to authority and school rules; to manifest a sense of responsibility for yourself and respect for others; to adapt to your environment; and to learn new skills[.]" 20 C.F.R. § 416.924d(h)(5) (1994). The plaintiff argues that incidents documented in the record demonstrate Christopher's at least moderate limitation in this area. Specifically, the plaintiff notes that Christopher becomes sulky and withdrawn when he is disciplined, that he experiences frustration and withdrawal in school daily, that he was suspended from riding the bus to school in the first grade because of fighting and carrying knives and stones, that he responds inappropriately to authority in class and that he has had some problems with personal hygiene. (R. at 134–36, 145.) Again, the plaintiff complains of the ALJ's failure even to mention this evidence in his decision.

In response, the Secretary correctly argues that its decision is supported by substantial evidence; the Secretary points to evidence that, contrary to that relied on by the plaintiff, shows that Christopher is a well-adjusted, self-confident and happy child who generally behaves well in school. While Christopher was suspended from riding the school bus in the first grade, he has resumed riding the bus since that time without any documented incident that would prevent him from continuing to ride the bus.

Christopher's most recent school review, in April of 1993, noted: "Chris is very confident

---

5. Christopher would not have been entitled to benefits unless he had a marked limitation in one area and a moderate limitation in another, or a moderate limitation in each of three areas. Three of the ALJ's findings are challenged in this appeal. To prevail, the plaintiff would have had to demonstrate that at least two of the ALJ's findings were not supported by substantial evidence. However, the plaintiff has not made such a showing with respect to even one finding.

**48**

and determined. Chris tends to play by himself. He works cooperatively in groups. He is often an [sic] negotiator when problems arise. Chris can be stubborn and challenge authority. Chris had [sic] adjusted well to Saranac." (R. at 162.) It also noted that Chris had "age appropriate" "self-help skills." (R. at 163.) Additionally, there is evidence in the record that Christopher gets along well with others in class. (R. at 146.) And, Christopher's mother testified that, while Christopher and his older brother fight constantly, Christopher can get along with neighborhood children as long as the other children do not pick on him. (R. at 29.) This is consistent with Ms. Baker's prior statement in a 1991 application that Christopher "plays with kids from neighborhood— gets along well." (R. at 82.)

The issue is not whether there is conflicting evidence in the record—which, admittedly, there is—but rather whether there is substantial evidence to support the ALJ's determination that Christopher has a less than moderate limitation in this functional area. There plainly is such evidence to support that determination.

### III.

For all of the reasons explained above, the Court finds that the decision of the Secretary denying Supplemental Security Income benefits to Christopher is supported by substantial evidence. Thus, the defendant's motion for judgment on the pleadings, pursuant to Rule 12(c), is granted and the plaintiff's requests for a reversal of the Secretary's decision, attorney's fees and other appropriate relief are denied.

**SO ORDERED.**