**Demetrius MILLER, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 94–CV–532A(H).**

United States District Court, W.D. New York.

Sept. 12, 1995.

Alan B. Block, Neighborhood Legal Services, Inc., Buffalo, NY, for Plaintiff.

Patrick H. Nemoyer, United States Attorney (Assistant United States Attorney, of counsel), Buffalo, New York, for U.S.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1)(B), on November 23, 1994. On August 11, 1995, Magistrate Judge Heckman filed a Report and Recommendation recommending that defendant's motion for judgment on the pleadings be denied and the case remanded to the Secretary for reconsideration.

The Court having carefully reviewed the Report and Recommendation, the record in this case, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion for judgment on the pleadings is denied and the case is remanded to the Secretary for reconsideration.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

Filed Aug. 11, 1995

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara, to

hear and report, in accordance with 28 U.S.C. § 636(b). Plaintiff initiated this action to seek review of the final decision of the Secretary of Health and Human Services (the "Secretary")[1] establishing June 1, 1992 as the onset date for Supplemental Security Income ("SSI") benefits. The Secretary has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the following reasons, the Secretary's motion should be denied.

## BACKGROUND

Plaintiff was born on July 27, 1973 (T. 31).[2] He alleges disability due to mental retardation.[3] He completed ninth grade in a special educational setting (T. 248). He worked during the summers of 1989 and 1990 for the Mayor's Summer Youth Program (T. 257).

The medical evidence shows that plaintiff was evaluated on April 15, 1986 by Rev. Stephen Gerencser, a certified psychologist. The revised Wechsler Intelligence Scale for Children ("WISC–R"), Bender Gestalt, and Slosson Short Reading Tests were administered. Rev. Gerencser reported plaintiff's WISC–R scores as Verbal I.Q. of 68, Performance I.Q. of 65, and Full I.Q. of 64 (T. 210). Rev. Gerencser concluded that plaintiff demonstrated functioning on the mild retardation (defective) level (T. 211).

On March 31, 1992, Dr. Thomas C. Dickinson administered a battery of tests, including the Wechsler Adult Intelligence Scale ("WAIS"). Plaintiff obtained scores of 72 Verbal I.Q., 69 Performance I.Q., and 70 Full Scale I.Q., placing him in "the lower end of the borderline mentally retarded range of ability" (T. 229). On the Vineland Adaptive Behavior Scale ("VABS") plaintiff scored at

the seven-year five-month level for communicative skills, the ten-year seven-month level for daily living skills, and the eleven-year six-month level for socialization skills (T. 230). His overall adaptive behavior composite score was 49 (*id.*). Dr. Dickinson concluded that plaintiff functioned in the borderline mental retardation range with moderate to serious social and educational limitations. Discussions with plaintiff and his mother showed adjustment disorder with depression and limited social contacts. There was no frank thinking or emotional disturbance. Plaintiff was able to manage his own personal and financial affairs, but was also quite dependent on his mother. Dr. Dickinson recommended that plaintiff be referred for appropriate job evaluation, training and placement (*id.*).

On June 15, 1992, plaintiff was admitted to the City of Buffalo Substance Abuse Services counseling program (T. 234). He tested positive for cannabis-cocaine on seven occasions during June and July of 1992 (T. 236). He reported that he used cocaine-laced marijuana twice a week and drank three cans of beer a day (T. 234). He denied any health or psychiatric problems (T. 235). He was terminated from the counseling program on August 3, 1992 for excessive absenteeism, noncompliance with agency rules and regulations and failure to have a physical completed within 21 days of admission (T. 233).

On October 1, 1992, Dr. Daniel J. Willis performed a mental status examination on behalf of the New York State Office of Disability Determinations. In Dr. Willis' opinion, plaintiff was "grossly disabled in multiple facets of his life" (T. 239). He showed very

---

**1.** Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with § 106(d) of that Act, Shirley S. Chater, the Commissioner of Social Security, has been substituted for Donna E. Shalala, the Secretary of Health and Human Services, as the defendant in this action. Because the determination appealed from in this case was rendered prior to this statutory transfer of function, and in the interest of continuity of precedent, the court will continue to refer to the defendant as "the Secretary."

**2.** References preceded by "T" are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint.

**3.** Plaintiff's original application for SSI child's benefits was filed by his mother on his behalf on August 2, 1983 (T. 31–40). After denial (T. 42–46), a second application was filed on October 3, 1985 (T. 47–56). This application was likewise denied (T. 57–61). Plaintiff filed a third application on his own behalf as an adult on June 1, 1992 (T. 62–74).

little or no insight as to his limited functional status, inability to carry through on simple tasks, and poor judgment as evidenced by frequent cocaine, marijuana and alcohol use. Dr. Willis considered plaintiff "quite socially dysfunctional" (id.).

Non-medical evidence shows that at the age of 9 years, when he was in the third grade at Martin Luther King School, he had difficulty learning and performing at grade level (T. 202). On October 28, 1982, School Psychologist Morris Cohen reported that plaintiff obtained an I.Q. score of 74 on the Stanford Binet Intelligence Scale, which indicated functioning within the mentally retarded range of intelligence (T. 203). He showed signs of primitive development in many areas of his personality. Transfer to a special educational program was recommended (id.).

An Individualized Educational Program ("IEP") report dated November 18, 1982 indicated that plaintiff had deficits in all academic areas. With respect to social development, plaintiff demonstrated no behavioral problems, and was quiet and pleasant. He was in good health. He exhibited a short attention span, and required a smaller, more structured setting to perform (T. 204). On January 10, 1983, he was placed in a self-contained class for educable mentally retarded students at School 51 (T. 198).

On May 11, 1990, plaintiff's teacher reported that he seemed to have lost interest in school and was apparently "running with the wrong crowd" (T. 224). His attendance was irregular, but he "could function well within S3 program when present if he improved his attitude" (T. 225). An undated checklist attached to this report indicated that plaintiff was performing at an "ability appropriate" or "above average" level in all areas of academic achievement and social development, except that he was at a "developing" level with respect to student/teacher relationship (T. 226).

In a report dated June 18, 1990, Educational Specialist Jacqueline Campbell indicated that plaintiff's classroom performance was adversely affected by irregular attendance. His teachers reported poor attitude and waning interest in school since the previous year. He was doing "especially well" in service station technology until attendance became a problem (T. 222).

In a report dated July 10, 1990, School Psychologist Stephen W. Shanley summarized plaintiff's previous psychological assessments which indicated that he was slow, concrete, sociable and polite. His drawings demonstrated low self-esteem. He had some math skills, but irregular attendance reduced actual academic growth (T. 220).

On July 16, 1990, social worker M. Jacobs reported that plaintiff was able to make friends easily, and had many neighborhood friends. He helped around the house with chores. He was not a behavior problem at home or in school (T. 223).

An IEP review printout dated August 21, 1990 indicated that plaintiff was functioning at an "ability appropriate" level in all areas of social development (T. 216).

Plaintiff's application for SSI benefits was denied initially (T. 75–78). However, upon reconsideration of his application in light of the expanded rules for determining child's benefits as set forth in *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990),[4] plaintiff was awarded SSI benefits with an onset date of June 1, 1992 (T. 137–144).

Plaintiff requested a review of the decision on reconsideration to the extent that it established June 1, 1992 as the onset date. A hearing was held on June 4, 1993 before Administrative Law Judge ("ALJ") Stanley A. Moskal, Jr., at which plaintiff and his mother testified (T. 245–260). On July 15, 1993, ALJ Moskal issued his decision finding that plaintiff was not entitled to SSI benefits prior to June 1, 1992 (T. 15–21). The ALJ's decision became the final determination of the Secretary on May 26, 1994, when the Appeals Council denied plaintiff's request for review (T. 3–4). Plaintiff filed this action on

---

4. As noted by ALJ Moskal in his hearing determination, plaintiff's August 2, 1983 SSI application was readjudicated under the Secretary's regulations promulgated as a result of the *Zebley* decision. The ALJ did not indicate whether plaintiff's October 5, 1985 application was likewise readjudicated.

July 19, 1994 seeking review of the Secretary's determination.

### DISCUSSION

 The Social Security Act states that, upon review of the Secretary's decision by the district court, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g) (1991). Substantial evidence is defined as evidence which a "reasonable mind might accept as adequate to support a conclusion...." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938), *quoted in Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991). Under these standards, the scope of judicial review of the Secretary's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Secretary. *Richardson, supra,* 402 U.S. at 401, 91 S.Ct. at 1427. The court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Secretary. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982).

 The Secretary's determination cannot be upheld, however, when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Grey v. Heckler,* 721 F.2d 41, 44 (2d Cir.1983); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

 In this case, plaintiff claims that the medical evidence establishes his disability as of August 2, 1983, the onset date alleged in his initial application for SSI benefits. SSI benefits are paid "to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level ...," 20 C.F.R. § 416.110 (1994) [5]; 42 U.S.C. 1381. For the purposes of the SSI program, an individual will be considered disabled if he or she:

> is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or which can be expected to last for a continuous period of not more than twelve months (or, in the case of a child under the age of 18, if he [or she] suffers from any medically determinable physical or mental impairment of comparable severity).

42 U.S.C. § 1382c(a)(3)(A). The Secretary's regulations define the term "comparable severity" as a physical or mental impairment that so limits the child's ability to function independently, appropriately, and effectively in an age-appropriate manner that the child's impairment and the limitations resulting from it are comparable to those that would disable an adult. 20 C.F.R. § 416.924(a).

In *Sullivan v. Zebley, supra,* the Supreme Court invalidated the Secretary's regulations because they did not provide for the same type of individualized functional analysis in child disability claims that is provided with respect to adult disability claims. 493 U.S. at 541, 110 S.Ct. at 896–97. In response to *Zebley,* the Secretary established the following procedure for evaluating a child's disability claims:

> (1) If the child is engaged in a substantial gainful activity, he or she will not be considered disabled.

> (2) If the child is not so engaged, the Secretary will consider his or her physical or mental impairment(s) to see if such impairment(s) is severe. If it is not severe, the child will not be considered disabled.

> (3) If it is severe, the claim will be reviewed further to see if the impairment meets or equals in severity any impairment that is listed in Appendix 1 of subpart P of part 404 of this chapter, in which case the claimant will be considered disabled.

---

**5.** All references to the regulations are to Title 20 of the Code of Federal Regulations as revised as of April 1, 1994.

(4) If the impairment is severe but does not meet or equal the severity of any listed impairment, the Secretary will do an individualized assessment of the impact of the impairment on the child's overall ability to function independently, appropriately, and effectively in an age-appropriate manner. 20 C.F.R. § 416.924(b)-(f); *see Baker v. Secretary, Dept. of Health and Human Services,* 874 F.Supp. 41, 44 (N.D.N.Y.1995).

Plaintiff claims that the ALJ erred at step four to properly assess his overall ability to function independently, appropriately, and effectively in an age-appropriate manner. In this regard, the Secretary's regulations provide that the ALJ must consider the extent of the claimant's "impairment-related limitations in the domains or behaviors affected by [the claimant's] impairment(s), and how well [the claimant is] able to do age-appropriate activities despite [his or her] limitations." 20 C.F.R. § 416.924d(d)(1). The regulations set forth elaborate guidelines, in terms of specific age categories, for determining the extent of impairment-related limitations in the affected domains or behaviors and how well the claimant is able to do age-appropriate activities despite his or her limitations. *See* 20 C.F.R. §§ 416.924d, 416.924e.

The following are the domains of development or functioning, or specific behaviors, that may be addressed in an individualized functional assessment of children between the ages of three and sixteen:

(1) Cognition;

(2) Communication;

(3) Motor abilities;

(4) Social abilities;

(5) Personal/behavioral patterns; and

(6) Concentration, persistence, and pace in task completion.

20 C.F.R. §§ 416.924d(c), (g)-(j); 416.924e(c)(2), (d). Generally, a child between the ages of three and sixteen will be found to be disabled if the child has a "marked" impairment in one of these six

areas *and* a "moderate" impairment in another of these areas, 20 C.F.R. § 416.924e(c)(2)(i), *or* has a moderate impairment in any three of these areas.[6] 20 C.F.R. § 416.924e(c)(2)(ii); *see Baker v. Secretary, supra.* An older adolescent—from age sixteen to attainment of age eighteen—is evaluated more in terms of his or her ability to function in a job setting. 20 C.F.R. §§ 416.924d(j); 416.924e(d)(2).

In this case, ALJ Moskal noted that the record established plaintiff's marked limitation in cognitive development from age three to the attainment of age sixteen. However, he found no evidence of limitation of communicative or motor abilities (T. 19-20). He also found that the record demonstrated "less than moderate limitation in social development, personal/behavioral development, and concentration, persistence and pace" (T. 20). Plaintiff demonstrated no emotional problems, and the record reflected that he regularly shopped, performed household chores, and was able to utilize public transportation (*id.*).

The ALJ made similar findings with respect to the period from age sixteen to the attainment of age eighteen. He found that "[s]ocially, [plaintiff] was able to utilize public transportation, and had friends, thereby exhibiting no socializing problems" (T. 20).

According to plaintiff, the ALJ's finding of less than moderate functioning in the social domain was based on an erroneous application of the regulations, and is not supported by substantial evidence. Under the regulations, when evaluating the social functioning of children between the ages of six and twelve, the ALJ must consider the following:

... [the child's] ability to play alone, or with another child, or in a group; to initiate and develop friendships, to respond to ... social environments through appropriate and increasingly complex interpersonal behaviors, such as empathizing with others and tolerating differences; and to relate

---

6. A "marked" impairment is one that is "more than moderate but less than extreme" where "the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained ba-

sis." 20 C.F.R. § 916.924e(c)(2) (incorporating by reference the definition of marked impairment at 20 C.F.R. Part 404, Subpt. P., App. 1, § 112.00(C)). A "moderate" impairment is one that is not as severe as a marked impairment. *Id.; see also Baker v. Secretary, supra.*

appropriately to individuals and groups (e.g., siblings, parents or caregivers, peers, teachers, school classes, neighborhood groups).... 20 C.F.R. § 416.924d(h)(4). When evaluating the social functioning of young adolescents between the ages of twelve and sixteen, the ALJ must consider the claimant's "ability to initiate and develop friendships, to relate appropriately to individual peers and adults and to peer and adult groups, and to reconcile conflicts between [the claimant] and peers or family members or other adults outside [the claimant's] family...." 20 C.F.R. § 416.924d(i)(4). For older adolescents between the ages of sixteen and eighteen, the ALJ is required to consider information about the claimant's daily activities, including school activities, as evidence of the claimant's ability to function in a job setting. 20 C.F.R. § 416.924d(j)(1), (2). For example, the ALJ must consider the claimant's ability, in various school or classroom settings, to understand, carry out, and remember simple instructions and work-like procedures; to communicate spontaneously, interactively, and age-appropriately; to maintain attention for extended periods of time and to sustain an ordinary daily routine without special supervision; to deal with authority figures and to follow directions while responding appropriately to correction or criticism; to interact with peers in school, school-related activities, and other age-appropriate environments; and to regulate mood and behavior, as evidence of the claimant's ability to do these things in a job. 20 C.F.R. § 416.924d(j)(2).

The ALJ's decision does not reflect whether, and to what extent, any of these considerations were made in this case. In light of the entire record, I find that the ALJ's failure to detail his adherence to the regulations, or to otherwise explain his determination of plaintiff's limitations in the social domain as "less than moderate," constitutes error and may have resulted in the exclusion of highly probative evidence. For example, Dr. Dickinson reported that, at age eighteen, plaintiff demonstrated a "moderate overall social limitation" with "moderate to serious educational limitations" (T. 230). His communication skills were at the seven year five month level, his daily living skills were at the ten year seven month level, and his socialization skills were at the eleven year six month level. Discussions with plaintiff and his mother indicated adjustment disorder with depression, and limited social contacts (*id.*). Dr. Willis reported that, at the same age, plaintiff was "grossly disabled in multiple facets of his life" and "quite socially dysfunctional" (T. 239).

As defendant's counsel points out, these reports were made after the medically determinable onset of an intervening impairment—*i.e.*, drug and alcohol abuse. However, the record also supports the reasonable conclusion that plaintiff's social dysfunction progressively manifested itself during school-age and young adolescence. For example, in the summer of 1990, when he was turning seventeen, plaintiff's teachers and consultants felt that he was losing interest in school, was running with the wrong crowd, and had developed an attitude problem (T. 222, 224–25). The record also reflects that plaintiff was terminated from counseling services August, 1992 for excessive absenteeism and failure to follow agency rules, even though he had been advised that his eligibility for SSI payments was conditioned on undergoing appropriate treatment (T. 136). Again, although this conduct took place after the onset of his substance abuse, it suggests the reasonable inference that his social functioning had progressively deteriorated.

In addition, the stipulation and order entered in settlement of the *Zebley* class action provided:

> For purposes of determining disability factors of eligibility for SSI payments, the Social Security Administration will instruct its adjudicators to infer that, in the absence of contrary evidence (such as traumatic onset of disability or a new impairment), or contrary medical judgment, a class member is disabled from the date of the first application of children's SSI disability payments which is included within the class period, if he has subsequently been found disabled under any disability program ..., either as a child or as an adult. In addition, where the class member has not been found disabled on a sub-

sequent disability claim and where evidence of the past condition is not readily available, the adjudicator will determine, based on the nature of the impairment, whether it is reasonable to presume that the class member's past condition and impairments were as severe as they are currently.

*Zebley v. Sullivan*, 1991 WL 65530, at *9 (E.D.Pa.1991). The ALJ's decision in this case does not reflect whether the inference of retroactivity discussed in the *Zebley* stipulation and order was considered or, if it was, why it was not applied.

For these reasons, I find that the ALJ's determination that plaintiff's disability did not commence until June 1, 1992 was based on a misapplication of the post-*Zebley* requirements for adjudication of children's SSI benefits claims.

### CONCLUSION

Based on the foregoing, defendant's motion for judgment on the pleadings (Item 7) should be denied, and the case should be remanded to the Secretary for reconsideration, pursuant to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the*

*District Court's Order. Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the plaintiff and the defendant.

**SO ORDERED.**

DATED: Buffalo, New York August 10, 1995

As Corrected August 18, 1995