Argued and submitted October 15, 1999, reversed and remanded for further
proceedings June 7, 2000

## Pamela KOEPKE,
*Petitioner,*

*v.*

## SENIOR AND DISABLED SERVICES DIVISION,
*Respondent.*

## (5-2417-CN3231; CA A104008)

7 P3d 553

Michael A. Keeney argued the cause for petitioner. With him on the brief was Marion-Polk Legal Aid Service, Inc.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Claimant seeks review of the final order of the Senior and Disabled Services Division (SDSD) denying claimant general assistance benefits for disability, ORS 411.710. Claimant seeks reversal of SDSD's determination that claimant did not meet the general assistance impairment criteria under OAR 461-125-0510(1)(a) (1998). On review for errors of law and substantial evidence, we reverse and remand for reconsideration of whether the combination of claimant's physical and psychological conditions meets the medical equivalence of the general assistance impairment criteria.

Claimant, a 47-year-old woman, was diagnosed with atypical connective tissue disorder (ACTD) and major depression, recurrent. Claimant applied for general assistance benefits in August 1997. That request was denied in December 1997, and claimant requested a hearing. The record from the hearing consists of claimant's testimony and medical reports from claimant's treating doctors and evaluators.

Briefly, the record contains the following information. In 1995, claimant had silicone breast implants removed after experiencing significant medical problems since 1993. The surgery revealed that one of the implants had ruptured and the other had leaked. Claimant's ACTD diagnosis arose from signs and symptoms that typified systemic silicone-related syndrome. The medical findings indicated that claimant had decreased range of motion in her left shoulder, low grade fever, salivary and lacrimal dysfunction, and chronic sinusitis and upper respiratory infections along with low grade reactive airway symptoms. Claimant's symptoms also include significant fluctuation in weight, severe malaise and fatigue, and chronically mild to moderate and periodically severe pain in both knees, right wrist, one hip, left shoulder and hand, both elbows and both ankles.

Claimant has had problems with depression dating back to 1987 that have evolved and worsened in reaction to claimant's ACTD condition. Medical evidence indicated that

claimant's depressive symptoms are chronic, have been manageable but intermittently significant as a reaction to her illness, and have a complex relationship with her physical symptoms. Psychological evaluations and tests conducted in 1994 and 1997 indicated that claimant has adequate memory capabilities, average attention and concentration abilities but moderate deficiencies of concentration persistence or pace. Claimant offered a 1998 psychological assessment from her treating doctor and mental health worker that concluded that she was markedly limited in all of those areas.

Claimant expressed anxiety about working for other persons but not about self-employment. Claimant was self-employed during parts of 1994 and 1995 but had to stop working each time due to illness. At the time of the hearing, claimant lived with her mother, had a strained relationship with her mother, siblings and other members of her family, and had not associated with other persons for several years. Claimant could drive a car and take public transportation but was unable to perform housework, bathe regularly, or go grocery shopping on her own.

On June 3, 1998, the hearings officer issued an order denying claimant general assistance benefits. Claimant then sought reconsideration and requested that two new medical reports, dated August 1998, be admitted to the record pursuant to OAR 461-025-0380. The August 1998 psychiatric evaluation and mental residual functional capacity assessment by Dr. Frederickson indicated marked limitations in memory, sustained concentration and persistence, social interaction, and adaptation and diagnosed her with major depression, recurrent, severe. No new order was rendered, and claimant's request for reconsideration was deemed to be denied as a matter of law on August 30, 1998. OAR 461-025-0380(5).

Claimant now seeks review, raising two assignments of error. We reject without discussion claimant's second assignment of error. Claimant's first assignment contends that SDSD erred in failing to find that she was eligible for general assistance benefits. We review for errors of law and for substantial evidence. ORS 183.482(8). First, we address

claimant's argument that the hearings officer erred as a matter of law by not considering whether the combined effect of the ACTD and depression was "medically equivalent," 20 CFR § 404.1526(a) (1999), to the listing criteria for ACTD, 20 CFR Part 404, Subpart P, Appendix 1, section 114.06 (1999) ("Listing 14.06"). Next, we address claimant's argument that the hearings officer erred in concluding that the combined effect of those conditions was not "medically equivalent" to the listing criteria for Major Depressive Syndrome, 20 CFR Part 404, Subpart P, Appendix 1, section 112.04 (1999) ("Listing 12.04").

■ ■   Oregon's general assistance program provides interim assistance to persons who have applied for benefits from the Social Security Administration (SSA) and who SDSD believes will be found eligible for the SSA benefits.[1] OAR 461-125-0510(1)(a) (1998) provided, in part:

> "(1)   To be eligible for [general assistance benefits] an individual must meet one of the following criteria:

> "(a)   Be unable to perform any work activity by reason of any medically determinable physical and/or mental impairment that can be expected to last for a continuous period of no less than 12 months from the date of request. This medical condition must meet or equal the Listings of Impairment ["listing criteria"] found in 20 CFR Part 404, Subpart P, Appendix 1."

The listing criteria are used by SSA at step three of a five-step disability determination process.[2] However, Oregon's general assistance benefits are limited only to those

---

[1] Because SDSD relies on SSA's rules, we rely on federal decisions interpreting those rules. Although those decisions are not controlling, we find them persuasive.

[2] SSA's five-step process asks the following questions: (1) Is the claimant engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, then SSA proceeds to step two. (2) Does the claimant have a "severe" impairment? If not, then claimant is generally found not disabled. If so, then SSA proceeds to step three. (3) Does the claimant's impairment or combination of impairments meet or equal an impairment in the Listing of Impairments? If so, the claimant is deemed disabled. If not, then SSA proceeds to step four. (4) Is the claimant capable of performing his past work? If so, claimant is not disabled. If not, then SSA proceeds to step five. (5) Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *Lester v. Chater*, 81 F3d 821, 828 n 5 (9th Cir 1995) (citing 20 CFR § 404.1520 (1999)).

individuals who meet or equal the listing criteria. Under SSA's rules, an impairment meets or equals a listed impairment in appendix 1, "[i]f you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairments * * *." 20 CFR § 404.1520(d) (1999). SSA explains that "medical equivalence" is determined as follows:

> "We will decide that your impairment(s) is medically equivalent to a listed impairment in appendix 1 *if the medical findings are at least equal in severity and duration to the listed findings.* We will compare the symptoms, signs, and laboratory findings about your impairment(s), as shown in the medical evidence we have about your claim, with the medical criteria shown with the listed impairment. If your impairment is not listed, we will consider the listed impairment most like your impairment to decide whether your impairment is medically equal. If you have more than one impairment, and none of them meets or equals a listed impairment, *we will review the symptoms, signs, and laboratory findings about your impairments to determine whether the combination of your impairments is medically equal to any listed impairment.*" 20 CFR § 404.1526(a) (emphasis added).

We begin with claimant's argument that the hearings officer erred as a matter of law by not considering whether the combined effect of the ACTD and depression was "medically equivalent" to the listing criteria for ACTD. We conclude that the hearings officer did err.

The hearings officer found that claimant suffers from ACTD. Listing 14.06 defines what is necessary to be disabled under that impairment. To establish ACTD under Listing 14.06, one may show:

> "B.  Lesser involvement of two or more organs/body systems * * * with significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise, and weight loss. At least one of the organs/body systems must be involved to at least a moderate level of severity." 20 CFR Pt 404, Subpt P, App 1, § 114.02B (1999).

The hearings officer found that "[c]laimant's ACTD involves her joints and her respiratory system" and that "[c]laimant's

chronic upper respiratory infections and chronic mild to moderate pain with frequent severe pain in a half dozen functionally essential joints is * * * at least a moderate level of severity * * *." In addition, the hearings officer found that claimant suffers from severe malaise and fatigue but that the record documented no medical signs of severe fever or weight loss.[3] Based only on the lack of severe fever or weight loss, the hearings officer concluded that "[c]laimant does not meet Listing 14.06."

The hearings officer considered only whether claimant's impairment met the listing criteria. The hearings officer however also found that claimant suffered from "Major Depression, Recurrent, Moderate," under Listing 12.04. Linked to that diagnosis, the hearings officer found that claimant has "extreme preoccupation with her physical condition, primarily her pain, which has resulted in diagnoses of possible ('Rule Out') Somatoform Disorder [and] Pain Disorder Associated with Both Psychological Factors and a General Medical Condition * * *." Also directly linked to the diagnosis of depression is the hearings officer's finding that claimant's activities of daily living (ADLs) are markedly restricted by her pain and lethargy. In particular, the hearings officer noted claimant's inability to cook or perform housework on a regular basis, inability to go grocery shopping on her own, and inability to bathe regularly.

Because the record discloses that the two diagnoses, ACTD and depression, are closely linked, the hearings officer was required to assess whether the combined medical findings are equal in duration and severity to the criteria of Listing 14.06. *See Lester,* 81 F3d at 829-30 (discussing medical equivalency of linked conditions). In other words, the hearings officer was required to assess whether, notwithstanding the fact that claimant did not suffer from severe fever or weight loss, the medical findings pertaining to the depression and ACTD are together as severe as the criteria for Listing 14.06. For example, the hearings officer should have considered whether claimant's preoccupation with pain symptoms or her inability to cook, do housework, go grocery shopping on

---

[3] The hearings officer noted that claimant had recently gained 15 pounds.

her own, or bathe on a regular basis combine with the symptoms of her ACTD condition such that the combined effects are equal in duration and severity to the criteria of Listing 14.06. Accordingly, the hearings officer erred as a matter of law in failing to consider the medical equivalence of claimant's conditions to Listing 14.06.

■      We next consider claimant's argument that the hearings officer erred in concluding that the combined effects of those conditions were not "medically equivalent" to the listing criteria for major depressive syndrome, Listing 12.04. 20 CFR § 404.1526(a). We conclude that the hearings officer misapplied the medical equivalency test and, accordingly, erred as a matter of law.

To meet or equal Listing 12.04, a claimant must demonstrate that a mental impairment exists and that claimant suffers a loss in at least two of the following areas of function essential to work: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) deficiencies of concentration persistence or pace resulting in frequent failure to complete tasks in a timely manner, and (4) repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that setting or to experience exacerbation of signs and symptoms. 20 CFR § 404.1520a(b)(3) (1999).

As stated above, the hearings officer found that claimant suffered from major depression, recurrent, moderate, and that she suffered from marked interference in her ADLs. Citing *Lester*, the hearings officer purported to take into account the combined effects, *i.e.*, medical equivalence, of claimant's depression and ACTD-induced pain symptoms but found that claimant did not suffer the required loss in any of the three remaining functional areas. In particular, with respect to deterioration or decompensation in work or work-like settings, the hearings officer noted:

"[Criterion #4] refers to repeated failure to adapt to stressful circumstances which cause the individual to either withdraw from that situation or to experience exacerbation of signs and symptoms and a deterioration of her criteria #1, #2, and/or #3 abilities. Stresses common to the work

environment include decisions, attendance, schedules, completing tasks, interactions with supervisors, interactions with peers, etc. Listing 12.99(C)(4).

"It appears from the record that the last times claimant worked were in 1994 when she ran a café and had a catering business and in late 1995 when she gave horse riding lessons. The August 1994 psychological evaluation by Dr. Kruger did not result in any diagnosis and indicated that she was functioning with no more than slight impairment in any area. Claimant's testimony was that any moderate or severe symptoms of her depression have developed only in the last six months. The evaluative history supports that. Therefore, claimant could only meet criterion #4 based upon her experience(s) within the last 6 to 12 months. (Arguably, her pain and fatigue played a part in her employment failures in 1994 and 1995. However, *Lester* would not kick in until she also had some mental diagnosis. Her experiences in 1994 and 1995 can not be used to determine if she now meets or equals Listing 12.04).

"The only experience I find in the record in the past year which could be stretched into a work-like situation involving attendance, schedules, completing tasks, etc., are her counseling sessions at the mental health clinic. As discussed under Criterion #3 * * *, that experience did not result in any decompensations or deteriorations or withdrawals. She attended, was punctual, and I infer that she completed her assignments. Claimant does not meet Criterion #4."

The hearings officer misconstrued the medical equivalency test and, in doing so, failed to consider the medical equivalency of claimant's conditions to Listing 12.04. SSA's rule simply requires examination of the symptoms, signs, and laboratory findings (the medical findings) of the various conditions to determine if a combination of those medical findings is equal in severity to all of the criteria for one of the listed conditions. 20 CFR § 404.1526; *Sullivan v. Zebley*, 493 US 521, 531-32, 110 S Ct 885, 107 L Ed 2d 967 (1990).

■ In *Lester*, the claimant suffered from physical and psychological conditions, including back pain and depression. The court explained that under 20 CFR § 404.1526, SSA was required to "consider whether these impairments *taken*

*together* result in limitations equal in severity to those specified" in Listing 12.04. 81 F3d at 830 (emphasis in original). The court then noted that, because the claimant's conditions were "inseparable from a medical standpoint, and thus [were] inextricably linked," the court did not need to "consider whether or under what circumstances such linkage is necessary in order to find that a combination of two different impairments equals a listing." *Id.* at 830 n 6. Contrary to the hearings officer's understanding, *Lester* stands only for the proposition that the conditions have to interact with each other in order to consider their relevance to one another—the significance of one condition on the severity of the second condition. Neither the administrative rule nor case law limits the consideration of medical findings that predate the onset of the second condition, so long as those medical findings for the first condition still exist at the onset of the second condition, are linked to the second condition and are relevant to the severity of the second condition.

The hearings officer must therefore consider the earlier 1994 and 1995 work failures as *evidence* of deterioration and decompensation in work and work-like settings *if* the failures were caused by medical symptoms of the ACTD that were still in existence at the relevant disability determination period, were likely to combine with claimant's depression, and were relevant to the severity of claimant's depression. *See State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999) (Relevance is a " 'very low threshold' * * *. Evidence is relevant so long as the inference desired by the proponent is reasonable, even if the evidence also could support a contradictory inference."). The hearings officer indicated that claimant's work failures in 1994 and 1995 were due at least in part to her pain and fatigue resulting from the ACTD. The hearings officer indicated that the pain and fatigue still existed at the time of the hearing. The hearings officer also indicated that claimant's pain, fatigue and depression have a synergistic effect: the depression is at least caused in part by the ACTD and the severity of the ACTD is exacerbated by claimant's depression and fixation on her physical condition.

Indeed, the psychologist, whom the hearings officer found persuasive, noted in 1997 that claimant

"appears to be suffering from a significant level of depression, which she traces to coping with medical problems. Psychological interview and test do not show symptoms that would render her unemployable *by themselves*. It seems that fatigue is her major problem, and that is difficult to assess here." (Emphasis added.)

It was the hearings officer's responsibility to assess the effect of claimant's fatigue and other symptoms in combination with claimant's depression. Here, the hearings officer did not do that. The hearings officer, therefore, erred in failing to consider whether the 1994 and 1995 work failures due to the ACTD pain and fatigue indicate a condition that is equal in severity to the depression criterion of deterioration or decompensation in work or work-like settings. We remand for that purpose.

Finally, it does not appear that the hearings officer admitted or considered the two most recent medical reports by Frederickson submitted by claimant in her motion for reconsideration. OAR 461-025-0380. On remand for consideration of claimant's application in light of the correct legal standards, SDSD should admit and consider those records if it appears that they are relevant.

In summary, we hold that SDSD erred in failing to consider the medical equivalency of claimant's conditions to the general assistance impairment criteria in Listing 12.04, 20 CFR Part 404, Subpart P, Appendix 1, section 112.04, and in Listing 14.06, 20 CFR Part 404, Subpart P, Appendix 1, section 114.06.

Reversed and remanded for further proceedings.