[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 22, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10331
Non-Argument Calendar

_____

D. C. Docket No. 08-21383-CV-AJ

MICHAEL D. ARRINGTON,

                                                              Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION,

                                                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 22, 2009)

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Michael D. Arrington, proceeding pro se, appeals the district court's order affirming the Commissioner of Social Security's (the "Commissioner") denial of his application for disability insurance benefits and supplemental security income ("SSI"). He argues that he met or equaled the requirements in the Social Security Administration's Listings of Impairments, Listings 1.00, 1.03, and 1.04, and that substantial evidence did not support the Administrative Law Judge's ("ALJ") determination that there were a substantial number of jobs in the national economy that he could perform. We AFFIRM.

## I. BACKGROUND

On 23 January 2004, Arrington filed applications for disability insurance benefits and SSI, providing that he was born in February 1960 and alleging a disability onset date of 6 October 2002. Exh. at 105, 335. He alleged that was disabled due to problems with his left knee and left leg. Id. at 110. Arrington's applications initially were denied, and again denied on reconsideration. Id. at 73-76, 83-85, 326-28, 330-33.

At an administrative hearing on 28 November 2006, Arrington testified that he was born on 4 February 1960, and had received a GED. Id. at 25-26. He had attended "ITT Tech" for approximately one year, but had had problems standing and waiting for the bus; he did not own a car. Id. at 26-27. Standing, waiting, and

walking en route to the school cause him "a lot of pain" in his left leg and his back. Id. at 27. He stopped going to school in May 2006 because of the pain. Id. at 29. Arrington said that his lower back pain was a big problem, and he spent a typical day in front of the computer and would try to do activities such as sweeping the floors or cutting the grass. Id. at 36. Such activities were difficult for him. Id. at 37.

Arrington lacked experience for a clerical job, though he had acquired some basic computer skills. Id. at 30. He last worked in October 2002 as a full-time driver and package deliverer. Id. at 30. He stopped doing that job after being hit by a car. Id. at 31. Before that, he worked for approximately two years as a loss prevention agent at a retail store, which required lots of standing, climbing stairs, and handling packages. Id. at 31-32. Before that, he worked for six months as a campus safety officer. Id. at 32.

Over a period dating back to 1994, Arrington had seen more than ten doctors about his ailments. The ALJ noted that one of these doctors, Gary J. Kelman, M.D., had stated that Arrington could do sedentary work alternating standing and sitting with no climbing, squatting, kneeling, bending, or stooping. Id. at 35. Arrington did not object to this assessment. Id. at 35-36.

The ALJ informed Arrington that she would ask the vocational expert

3

("VE") what work was available for one who could sit for eight hours in an eight-hour workday, but alternating sitting and standing, and who could not climb, kneel, crawl, crouch, or squat, but who occasionally could bend or stoop from the waist, and who could not operate a foot pedal or do any pushing or pulling with the left lower extremity. Id. at 38. Arrington replied, "That ought to be a good, that's a good question," but said he would have "a problem with the sitting." Id. The ALJ then stated, "I'm saying you can alternate sitting and standing [and] can stand up . . . part of the time," and Arrington responded, "that should be fine." Id. at 39. Arrington indicated that he could stand for about 15 minutes at a time and could sit 45 minutes to 1 hour and rarely sat for 2 hours at a time. Id. at 39-40.

The ALJ presented to Jeannine M. Salek, the VE, a hypothetical person: younger, with a high-school education, who was limited to sedentary work, needed to alternate sitting and standing, with a maximum of 15 minutes of standing at any given time, but who could sit up to 45 minutes to 1 hour at a time, with no climbing, kneeling, crawling, crouching, or squatting, could not do any repetitive work with the left lower extremity such as pushing or pulling foot pedals, and who occasionally could bend or stoop from the waist. Id. at 43. The VE testified that such an person could not do Arrington's past relevant work as a security guard or package deliverer, but could do "sedentary, unskilled to semi-skilled" work. Id.

4

at 43-44. As examples, she said he could work as a "surveillance system monitor," and that there were 3,400 such positions in Florida and at least 500,000 nationally, though she added that this number was, in fact, much reduced. Id. at 43, 47. She added that such a person could also be a dispatcher and that there were 3,200 such positions in Florida and 200,000 nationally. Id. at 44. The VE continued that the hypothetical person also could be a telephone solicitor and that there were 4,000 such jobs in Florida and 460,000 nationally. Id. at 48-49.

On 10 March 2007, the ALJ denied benefits, finding that Arrington had not been under a disability from 6 October 2002, through the date of its decision. Id. at 12-19. The ALJ determined that Arrington had severe impairments: "post traumatic arthritis of the left knee, status post 3 surgeries [and] degenerative disc disease of the lumbar spine." Id. at 14. The ALJ found, though, that Arrington did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, as the evidence did not show that his impairments were accompanied by the necessary signs, symptoms, or objective findings to meet or equal one of the listings. Id. at 14-15. The ALJ concluded that Arrington had the residual functional capacity to perform sedentary work, could perform a significant number of jobs in the national economy, and was not disabled. Id. at 15, 19.

The Appeals Council denied Arrington's request for review. Id. at 5-7. He then filed a civil action in the U.S. District Court for the Southern District of Florida seeking review of the ALJ's ruling. R1-1. Thereafter, the parties consented to have a magistrate judge issue a decision on the merits and filed motions for summary judgment. R1-11, 12, 15. The magistrate judge then entered an order and final judgment in favor of the Commissioner, finding that substantial evidence supported the ALJ's denial of benefits. R1-18, 19. Arrington appeals.

## II. DISCUSSION

We review the Commissioner's decision to determine whether it is supported by substantial evidence and whether the proper legal standards were applied. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Id. at 1158-59 (citation and internal quotation marks omitted). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation, internal quotation marks,

and alteration omitted) (per curiam). "Review of the Secretary's application of legal principles is plenary." Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995) (per curiam).

The Social Security Regulations outline a five-step process used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). First, the claimant must show that he is not currently engaged in substantial gainful activity. Id. § 404.1520(b). Next, he must show that he has a severe impairment. Id. § 404.1520(c). He then must show that the impairment meets or equals the criteria contained in one of the Listings of Impairments. Id. § 404.1520(d). If the claimant cannot meet or equal the criteria, he must show that he has an impairment which prevents him from performing his past relevant work. Id. § 404.1520(e) and (f). Once a claimant establishes that he cannot perform his past relevant work due to some severe impairment, the Commissioner must show that significant numbers of jobs exist in the national economy which the claimant can perform. Id. § 404.1520(g); Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).

A.    Listings of Impairments

If a claimant meets or equals the criteria of one of the listed impairments, the Social Security Administration will find the claimant disabled, without regard to the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d). "For

7

a claimant to show that his impairment matches a listing, it must meet <u>all</u> of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990) (emphasis in original).

As an initial matter, Arrington's argument that the ALJ did not evaluate his claim under the Listing of Impairments is belied by the record, as the ALJ found that Arrington did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. <u>See</u> Exh. at 14-15. Furthermore, Arrington's argument that he met the requirements of Listing 1.00, "Musculoskeletal System," is without merit because that Listing is an introductory section that provides definitions and other general information. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00.

Listing 1.03 provides, "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively . . . and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.03. The inability to ambulate effectively

> means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient

lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

Id. § 1.00(B)(2)(b)(1).

[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Id. § 1.00(B)(2)(b)(2).

With respect to Listing 1.03, the ALJ correctly determined that Arrington did not meet or equal the requirements of that listing because he did not establish that he had an inability to ambulate effectively. The medical evidence shows that, on 19 September 2002, Richard D. Goldstein, M.D., felt that Arrington was capable of carrying out normal job related activities. Exh. at 216. On 22 September 2003, an examination by Rowland W. Pritchard, M.D., suggested a condition of post traumatic arthritis in the left knee affecting Arrington's ability to stand or ambulate for any "persistent" period of time. Id. at 213. On 31 December 2003, Dr. Goldstein found that Arrington's gait on level ground was symmetric. Id. at 210. On 30 June 2004, Jozef Hudec, M.D., noted that Arrington's gait was

9

normal without the use of any assistive device, and that he was able to walk on his heels and toes and to perform a half squat. Id. at 232. Dr. Hudec opined that Arrington had no restrictions in walking, stooping, or climbing. Id. at 233. On 15 September 2004, Dr. Kelman set out that Arrington had a normal gait, could rise on his heels and toes, semi-squat and rise with mild anterior left-knee pain, and had moderate atrophy in his left quadriceps. Id. at 244. On 7 June 2005, Dr. Kelman found that Arrington ambulated well and could rise on his heels and toes. Id. at 236. Finally, on 26 May 2006, Kenneth W. Ward, M.D., reported that Arrington walked "uneventfully" without an ambulating device and did not appear to be in acute distress. Id. at 279. This substantial evidence supports the ALJ's conclusion that Arrington did not have an inability to ambulate effectively and, accordingly, that he did not meet or equal the criteria of Listing 1.03.

Listing 1.04 involves disorders of the spine or the spinal cord and requires evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. See id. § 1.04. Arrington does not point to any evidence that supports that he had nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, such that he met or equaled the criteria of this listing. The ALJ's conclusion that Arrington did not meet this listing therefore satisfies our scrutiny.

Arrington also showed no error in the ALJ's alleged failure to consider

10

reports from December 1997 and February 1999 by Alfonso F. Petti, M.D. These reports antedated Arrington's alleged disability onset date of 6 October 2002. <u>Id.</u> at 105, 335. In the December 1997 report, Dr. Petti noted that Arrington had some atrophy, weakness, and crepitus, but that he had reached maximum medical improvement and did not need a lifetime gym membership, any special equipment in his home, or any additional physical therapy. <u>Id.</u> at 361-62. In handwritten notes from February 1999, Dr. Petti suggested an unloader brace for Arrington's left knee. <u>Id.</u> at 357, 362. These reports do not provide help Arrington meet or equal the criteria of a Listing. Accordingly, the ALJ properly found that none of Arrington's impairments met or equaled one of the Listings of Impairments because he did not show that he met or equaled all of the criteria of a listing.

B.      The VE's Testimony

When a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments that significantly limit basic work skills, the ALJ can determine whether a claimant can perform other jobs through the testimony of a VE. <u>Phillips</u>, 357 F.3d at 1240. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." <u>Ingram v. Comm'r of Soc. Sec. Admin.</u>, 496 F.3d 1253, 1270 (11th Cir. 2007) (citation

11

and quotation marks omitted). The ALJ is not required to include findings in the hypothetical that he properly finds are unsupported. Crawford, 363 F.3d at 1161.

Arrington faults the ALJ for not including his complaints of left knee pain, left leg pain, and lower back pain in the hypothetical. The hypothetical did include, though, all of his functional limitations and Arrington indicated that the hypothetical, as posed, was proper. Exh. at 38. Because the ALJ's hypothetical included all the limitations to which Arrington testified, it was proper.

Arrington submits that the VE's testimony about the telephone solicitor job was contradicted by the job description and by the VE's own testimony, but he does not identify any specific contradictions in the evidence. See Blue Brief at 44-45. Because the hypothetical was proper, the VE's testimony constitutes substantial evidence to support the ALJ's conclusion. Ingram, 496 F.3d at 1270.

Finally, Arrington could not show that he was disabled due to the lack of a finding as to the transferability of job skills. As noted above, the ALJ properly consulted the VE with respect to Arrington's ability to work in other jobs. Furthermore, the ALJ properly found that the transferability of job skills was not material to a determination of disability. Exh. at 18; see SSR 82-41, available at http://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR82-41-di-02.html. The Medical-Vocational Guidelines provide that an individual aged 45 to 49 will be

12

found disabled if the individual (1) is restricted to sedentary work; (2) is unskilled or has no transferable skills; (3) can no longer perform past relevant work; and (4) is unable to communicate in English or is illiterate. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(h). Arrington never made a showing that he was illiterate or unable to communicate in English, such that he cannot show entitlement to disability under this guideline. See id.

Because the ALJ proposed a hypothetical to the VE that included all of Arrington's limitations and Arrington did not show any error in the ALJ's reliance on such testimony, the VE's testimony that there was a significant number of jobs in the national economy that a person with Arrington's impairments could perform constituted substantial evidence that he was not disabled.

### III. CONCLUSION

Arrington appeals the denial of disability insurance benefits and SSI, arguing that the ALJ's conclusions about his ability to perform jobs in the national economy was not supported by substantial evidence. We conclude that the ALJ's findings were supported by substantial evidence. Accordingly, we AFFIRM.

**AFFIRMED.**